Gordon v. Attorney General Good morning, Mr. Osorio. Good morning, Your Honors. May it please the Court. My name is Ben Osorio, and I represent the petitioner in this case, Mr. Keefe Gordon. There are two primary issues before the Court today. The first sort of big picture issue is the divisibility, how far we get to go on OCGA 16-13-30, whether it's controlled substance itself, whether it's Schedule I or Schedule II, or whether it's the actual specific identity of the chemical substance. The second issue that I think is more compelling here in light of this Court's recent decision in Guillén is if it is divisible to the specific substance, in this case, can the government have met its burden of proving by clear and convincing evidence the actual chemical identity? And our position— Guillén makes it pretty clear it's divisible, right? So, Guillén, Your Honor, was a bit of a gut punch about a month after we filed the petition for review. I understand that. I'm not faulting you. I'm just saying that we're bound by it. That pretty much decides that, right? I would argue that there are significant differences because, as I explained in my brief, Your Honor, I don't believe that the double jeopardy analysis can be the same as the categorical. I understand elements and elements sound similar, but in the categorical approach, I don't think they are. Also, in the Florida statute, the Florida State Supreme Court gives the jury instructions. In Georgia, the jury instructions, we don't have that same thing. Counsel, I have a little bit of experience with that, and I can tell you that there is a very bold-headed, all-in-cap statement of, we exclaim any part in this, do not rely on this, in the same way that that would happen if they were done by a committee, which is exactly what they are. Right. To say that they spring from the wisdom of the Florida Supreme Court justices is to give us or my former colleagues way too much credit. Okay. So, since the court seems to be leaning already that Guillén is binding, we're going to treat the Georgia statute the same way as the Florida statute. Let's take the position that I think that we can win. All right. So, the second is in terms of ecstasy, right? So, both Georgia and the Drug Enforcement Agency both say ecstasy is a street name. So, the government, number one, the IJ in this case never, I mean, he kind of just glosses over the fact that the DEA says it's a myriad of substances. So, you rely on that DEA report, which isn't in the record, but you quote that fact sheet from the DEA in your brief, right? Multiple times in the approach. Right. So, let's look at page 22 of your brief, which comes from the quote. It says in that fact sheet, quote, many ecstasy tablets contain not only MDMA, but also a number of other drugs or drug combinations. Right. The DEA report acknowledges that MDMA is in each of those pills. It just may be with other drugs or other combinations. And then it continues on to say that other things are also sold as ecstasy, MDMA, PMA, all these other things. But even if you don't need the DEA, the reasonable probability test says I can point to Georgia case law. So, all I need is Farley to point at two substances, TFMPP and BZP, that say that— Both of which were federally controlled substances at the time this occurred. Right, but I get to look at the time of removal. So, let's say that at the time, TFMPP is no longer on the— At the time of the conviction, both of those were federally controlled substances. So, no matter which substance it is, and I think the case law in Georgia is overwhelming that it refers to MDMA. But even if we accept your argument, all of those substances were federally controlled substances at the time of the conviction. So, I don't see how you can possibly win. Well, one, we have established that Georgia punishes a number of different substances as ecstasy. So, it's not confined to one. So, then we enjoy a Moncrete presumption. It's not our burden. Every one of the ones that the Georgia courts has referred to, though, was a federally controlled substance at the time of the conviction. I agree, but we have to look at the time of removal. So, when he's being judged under the INA to be removable from the United States at that time, it would be what drugs are in the federal— Removability is, though, based on a conviction that was obtained at an earlier point in time, right? Yes, Your Honor. And we're just trying to figure out what that conviction was for, right? I agree, Your Honor, but the issue becomes this. If I was convicted of cocaine in 2003, and then the federal government decides to take off the federal controlled substance list, do you think I can still be removed for cocaine later on? For having been convicted of something that qualifies under federal law, when the conviction was obtained, it was a valid conviction. The conviction hasn't been vacated. If it's been taken off the list, there's no retroactive expungement of the conviction, is there? No, but I think we have to look at what's on the federal controlled substances at the Let's fast forward. Feral, from the Georgia Supreme Court, specifically stated, quote, MDMA, commonly known as ecstasy, is a Schedule I controlled substance under Georgia law, right? Right. And Cooper specifically referred to the chemical MDMA as MDMA or ecstasy, right? Right. So how do you deal with Farley then? Well, if there's conflicting evidence, let's assume that there's conflicting evidence, that BIA is allowed to look at that conflicting evidence and make a finding as it did here, is it not? No, because then you're, number one, you're totally blowing away DHS's quantum of proof that they have. But I'm not saying it's not that you have to prove by clear and convincing evidence, but you have Georgia Supreme Court case law in which it's relying on. How is that not sufficient evidence to sustain the burden in this case? Because there's also Georgia cases, again, when we're looking at reasonable probability, if I can point to other Georgia cases where other substances are punished as ecstasy, and we know that Georgia has referred to a number of different things as ecstasy, let's step back. MDMA is also often referred to as molly. If it said molly in his indictment and molly in his conviction records, would we all agree that that's too vague? I don't know the answer to that. But what other, I mean, I understand you rely on Farley, but a bunch of the other cases you rely on don't say that it's ecstasy. It says it's similar to ecstasy or it's ecstasy-like. But other than Farley, I don't know of any other case, including Rogers and Walker, which you guys discuss, that says this substance is ecstasy. But I also think, let's say that Mr. Gordon was sitting there and he's talking to his public defender, and he's like, I didn't have MDMA. I had TFMPP. And the public defender's like, it doesn't matter. Either way, either one's a controlled substance. So he's like, okay, I'll just take a plea rather than take this to trial. We don't have a definitive answer. There's no evidence of that. There's zero. I mean, your client did not testify at any portion that I pled guilty to this, even though I thought it was this substance as opposed to that substance. What we do know is that Georgia, as a matter of law, where something is charged as ecstasy, refers to MDMA as ecstasy, the Georgia courts. And I don't know why the BIA would not be able to rely on that. But also, I don't know how you can just jump over Farley. That seems to blow away Duenas-Alvarez, where you say that I either have to point to my own case or point to one other case. It's not that I have to point to multiple cases. So we have pointed to one other cases where sale of ecstasy was comprised of one substance and another substance, one of them federally controlled, one of them non-federally controlled. So then once we step back and say he enjoys the Moncrief presumption and all parties have conceded that the schedule is overbroad, that's it. I mean, it's too vague. Well, I want to go back to then what Judge Bill Pryor said, because as I understand it, all those substances were federally controlled. Both options under Farley were all federally controlled. So I don't know. At that time. Anything that can be called MDMA or ecstasy seems to have been federally controlled at the relevant time period we're talking about. If that's incorrect, let me know. But if that's the case, that's problematic for you too, isn't it? Again, I'm on the understanding that when we're judging removability, we look at the time that they're actually in removal proceedings. Again, if something was taken off the federal controlled substance list and I don't see how you could later be removed from that. Let me ask it this way. If we look at the federal controlled substance list at the time of removability that you're talking about and every substance that could be considered ecstasy is already on there, that would be problematic for you, would it not? I don't think that we have every case, but also I would fall back on the DEA's report where they say DXM, caffeine, all of these things that are not. I just read to you from at least the quote from the DEA report that you had that where it said specifically many ecstasy tablets contain not only DMA, meaning MDMA plus something else, right? Right. Yeah, no, but then it continues on and it also says DXM, caffeine, over the counter drugs are sometimes called ecstasy and sold as ecstasy on the street. I just don't see how if we have a street name and we know that it refers to a myriad of things and we have no certainty that the categorical approach requires, the mere fact that we're having this factual argument is everything that the categorical approach was designed to avoid. You know, we're supposed to be able to come back 30 years later and say when somebody is in removal proceedings, either this is a removable offense or it's not, and we just don't have that here. I don't think that you can say that a street name is the certainty that Mathis requires here. Again, if it was dope, if it was Molly, if it was, as the case in Martin, Blue Lily 66, I just don't think that that would be sufficient. And because it is 60%, 70% of the time refers to MDMA, I don't think that the government can meet its clear and convincing burden. And I think instead the burden has been placed on Mr. Gordon to show why he shouldn't be removable. So I think, again, at this stage, I don't think the IJ should have sustained the charge of removability. And I'd like to reserve the rest of my time for rebuttal, Your Honor. You've got five minutes, Mr. Osorio, that you've reserved.  Ms. Miles. Good morning, Your Honors. I'm Erica Miles for the Attorney General. Unless the Court would like to discuss divisibility, the government's position is well articulated in our brief that Georgia Supreme Court law and this Court's precedent demonstrate that the controlled substance element is divisible as to the identity of the drugs. The MDMA question, ecstasy, several Georgia courts of appeals cases when examining a drug that has been charged as ecstasy have stated without mincing words that ecstasy is MDMA in Georgia. And the Walker case gives us a good example where they even distinguish. They said that there's street ecstasy and that was determined to be this other drug, TFMPP. In the Walker case, a field test demonstrated to the officer at the time that they believed it was ecstasy. As they took it back to the lab for chemical analysis, they realized it was not, in fact, ecstasy. It was the street drug, the street ecstasy, TFMPP. They indicted him for TFMPP and he was convicted for TFMPP. And in the other cases like Rogers and Farley, it was, in fact, established that the person, Rogers and Farley, were both in possession of the other drug that came out at trial and it just wasn't enough to overturn a conviction because it was those other drugs, the BZP or TFMPP, whichever the drug, were also federally controlled drugs. So it did come out that, although the original belief was that it was ecstasy and that that's what he possessed, he, in fact, possessed something else and the court found it sufficient that he possessed that other drug, such as BZP, because that, too, is federally controlled. But what all of this shows is that a prosecutor must prove what the substance is, that the person knows what the substance is, and that it, in fact, is federally controlled. And the courts, when they do take this question seriously, they do fact-find as to what the drug is. And when it's not ecstasy, which they refer to as MDMA, they get to the bottom of what the substance actually is. Let me ask you a question about your brief. In your brief, when you're talking about Farley, you say that the defendant, and you said right here, I think, that the defendant was convicted for a different substance. But Farley says on the page that you cite that the defendant was convicted of the sale of ecstasy. Yes, he was convicted of the sale of ecstasy, but it was determined that it was, in fact, BZP. And that fact-finding was made. It was just that the court determined that they were significantly similar enough and that BZP can be contained within, as you had the discussion. So it mattered not that it was BZP or MDMA in that particular case. The conviction stood for ecstasy, but the fact-finding came out that the tablets of ecstasy, which contain multiple drugs, BZP being one of them was enough for the conviction. Where is that in Farley? I don't have Farley in front of me. I apologize. I thought that the court in Farley had only kind of tacitly accepted that the conviction was for the sale of ecstasy, but because that really wasn't an issue in the appeal, it goes on and decides the issues on appeal. Right. It was not a central issue in the case, so you can only... No holding about, you know... Exactly. ...about that issue. There's no holding about that. And in the Walker case and in the Rogers case, for example, the Rogers case was where the person said, I thought I had BZP. And if the jury did not believe, so he either needed to be charged with having BZP or he could not be convicted. And the identity of the substance was distinctly at the forefront of the issue in the Rogers case because the mens rea of what did the person believe they were possessing was front and central there. And a person could not be convicted if they said, I thought I possessed BZP but was charged with MDMA or with ecstasy. But in that case, it was sufficient that the jury did not have to believe that he thought he possessed something else. So when the identity of the substance is front and central in the cases or when the court is just clarifying for the record that they're indicted for ecstasy, we all know ecstasy is not the term used on the drug schedule, the court clarifies that ecstasy is MDMA for Georgia purposes. And that's where the case law stands. There's no case to the contrary that says ecstasy is considered something else. If it's determined to be something else, they indict for something else and they convict for something else. And Georgia's never said an indictment or an information is defective because it alleges ecstasy and it was proved at trial that it was some substance that's either ecstasy-like or MDMA, right? Right. They haven't said that the indictment is problematic or has some big error, but that is typically because, as you were noting earlier, they're all controlled substances. But in the cases, they really do, when the identity becomes in question, they do get to the facts of what the substance really is and the prosecutors have changed their initial assessment and have indicted on the correct drug. So then MDMA or ecstasy gets out of the picture and they indict for TFMPP and whatnot. If the court doesn't have any further questions, I will cede my time then. Great, thank you. Thank you. Excellent. Mr. Osorio? So I would just start by saying, again, it is not my burden. It is not Mr. Gordon's burden at the Immigration Court. So I just don't think that there is substantial evidence here, given if we're going to say Guillen applies and we have to know the specific chemical identity and we've established that the case law has referred to ecstasy as a number of different things. And one case we have, and again, I only need one case to point at, refers to and upholds a conviction of a sale of ecstasy that contains multiple drugs. It seemed to me, though, that the point Ms. Miles ended on was right, which is that whenever the identity of the substance has been an issue that the court needed to decide, that the Georgia courts have always decided that ecstasy is MDMA and that the best thing you have is a tacit exception in Farley that it might have been something else, but it wasn't an issue that had to be decided in that case. And even the substances that it might have been are federally controlled substances too. But again, that sort of minimizes the Moncrieff presumption that he enjoys in this setting. So it would be the minimum conduct of the statute, given that we don't know what the chemical identity of the substance is. So it would be the whole range of controlled substances. It wouldn't just be confined to even the substances in the case law. But we know it's ecstasy, right? We do know that. We know that it's a street name for something that could refer to a period. No, no, no. We know from the Shepard document that it's ecstasy. And if the only evidence that has been presented to the BIA is that whatever ecstasy is, it is a Schedule I, it is both prohibited by Georgia and prohibited by the federal law at the time of removal, at the time that you've stated, then how can you possibly prevail? But TFMPP at the time of removal is no longer on the federal controlled substance. So that's it. So if you're wrong about that, we'll look. But if you're wrong about that, you agree that that's problematic for you. It's problematic if we agree that we can say with certainty what ecstasy is. Again, I take the position that if I put Molly in there, if I put Blue Magic in there, if I put some other street name and we're going to say that the chemical identity of the substance. You're looking at it in the abstract. The BIA actually had stuff in front of it. It had something in front of it. And what it had in front of it was Georgia law. And you haven't pointed out that Georgia law says it's caffeine, ecstasy is caffeine, or ecstasy is something else. You've said it's these. Some case laws suggest it's MDMA. You've pointed out some others that it could be these two other substances. If those two other substances are also Schedule I at the relevant time period under federal law, isn't that problematic for you? That are listed. I apologize. I still don't think so because street name to me at its best is vague. I think, and again, once we get to the vague point, Mr. Gordon wins. So I understand you're saying, okay, well we can only point to these different substances. If an indictment said Coke, are we to assume anything else other than cocaine? Are we to assume it's Coca-Cola? But if an indictment said dope. That's not the question I asked you. Yes, dope might be different. But if it says Coke and everyone understands Coke to be cocaine. I think if the indictment said it was charged with possession of Coke, a Schedule I substance, and then at trial it was proved that it was cocaine and there were drug lab tests, that yes, that would be sufficient. But the thing is we just don't know what's behind the veil in this particular case. So if you go and look at the conviction docs. We're never allowed to look at lab reports. That's never a Shepard document. Right, but even the conviction doc itself, like the final document doesn't even reference ecstasy. It just says VGSA1. So, I mean, in theory he could have pled to an unnamed Schedule I drug. We don't know. I just think that the record is too vague and ambiguous. Isn't that why the burden of proof though is not metaphysical certainty but is instead clear and convincing evidence? Right, but the Supreme Court has said that's near beyond reasonable doubt. And this is an individual who you go back and look at the record who has changed his life, who hasn't had any contact with law enforcement since 2005. So we're going to banish him? We're going to permanently exile him based off of this record? I mean, he's completely reformed his life and that evidence is in the record. And so that's why I don't think that there is sufficient evidence that the government could have possibly met its burden. I just feel like it was given short shrift at the immigration court stage and then completely glossed over at the board when we've repeatedly pointed to both the DEA and Georgia cases that say different. And I thank the court for its consideration. Thank you, Mr. Osorio. We have your case and we'll move to the final case of the week.